ELLWOOD V. MATLACK, Defendant in Error, v. E.
C. PAREGOY, J. B. McCULLOUGH and
CHARLES W. EDWARDS, Plaintiffs in Error.

**Springfield Court of Appeals, January 30, 1915.**

1. **PRINCIPAL AND AGENT: Implied Agency: Based on What.**
An implied agency must be based upon facts for which the
principal is responsible and upon a natural and reasonable con-
struction of those facts.

2. ————: **Reducing Royalty in Mining Lease: Agent's Au-
thority: Review of Evidence.** Evidence examined and re-
viewed and considered not sufficient to warrant a finding that the
agent of plaintiff had authority to reduce the royalty in a min-
ing lease or that plaintiff was estopped to deny such authority.

3. ————: **Establishing Relationship: Burden of.** The party who
claims the benefit of a contract which he claims to have been
made by an alleged agent has the burden of proving the agency.

.4. ————: **Contract Made by Agent: Authority: Who Must
Establish.** One claiming the benefit of a contract made by an
alleged agent must prove that the making of such contract was
within the scope of the agent's authority.

5. ————: **Agency by Estoppel: Who May Invoke.** "Agency by
estoppel" can only be invoked by one who has relied and acted
on the conduct of the alleged principal.

Error to the Jasper County Circuit Court, Division
Number Two.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Fred Kelsey, H. W. Currey* and *George V. Farris*
for plaintiff in error.

(1) All agencies carry such powers as the princi-
pal has, by his acts, or by negligent omissions, or by
acquiescence, caused or permitted persons dealing with
the agent reasonably to believe the principal had con-
ferred. Mechem on Agency (2 Ed.), sec. 720 and 721,

cases cited; Fanning v. Cobb, 20 Mo. App. 577; DeBaun
v. Atchison, 14 Mo. 543; Rice v. Groffman, 56 Mo. 434;
Cuples v. Whelan, 61 Mo. 583; Grover, etc. v. Polhemus,
34 Mich. 247; Conn. Mut. Life Ins. Co. v. Pult, 45 Mich.
113; Kiley v. Forsee, 57 Mo. 390; Bronson v. Chappell,
12 Wall. 681.    (2)    When Matlack learned that his
agent had executed a written contract to Paregoy and
associates reducing the royalty, for the term of the'
lease, to twenty per cent, it was his duty to notify
Paregoy and associates that he disapproved said act
of his agent.   Failing to do so, and availing himself
afterwards of the contract of Paregoy and associates,
knowing that they were relying on the contract of re-
duction, when they made the contract with Seals, which
he consented to, he ratified said act of his agent.   Mary
v. Trust Co., 138 Mo. 278, 282; Bless v. Jenkins, 129
Mo. 647; Smith v. Smith, 62 Mo. App. 596; Keeley v.
Salisbury, 33 N. Y. 648; Ilgenfritz v. Railroad, 169 Mo.
App. 652, 657; Ballard v. Nye, 72 Pac. 156; Phillip v.
Phillip, 127 Pac. 346; Day v. Merrick, 138 N. W. 400;
Triller v. Sadle, 138 N. W. 728; Fleming v. Sherwood,
139 N. W. 101.

*Thomas Hackney* for defendant in error.

(1)   The authority of an agent to make a lease for
more than one year must be in writing.   Sec. 2781, R.
S. 1909.   (2)   A like written authority is required by
the statute where the agent assigns, grants or surren-
ders a lease.   Sec. 2782, R. S. 1909.   (3)   Contracts
*required* by the Statute of Frauds to be in writing can-
not be modified by parol.   Rucker v. Harrington, 52
Mo. App. 481; Warren v. Mayer Mfg. Co., 161 Mo. 112.
(4)   Where the authority of an agent to execute a con-
tract must under the Statute of Frauds be in writing in
order to bind the principal, so a ratification by the prin-
cipal (absent acts amounting to equitable estoppel),
must likewise be in writing.   Hawkins v. McGroarty,

110 Mo. 546; Johnson v. Fect, 185 Mo. 345. (5) The only authority ever conferred by the plaintiff on Robinson, as his agent, including all the writings, conversations and dealings between them, was that of a mere caretaker of the plaintiff's property, and as such agent, Robinson had no express nor implied authority to reduce plaintiff's royalty and give up one-half of the 'plaintiff's property rights. The authority conferred by the plaintiff on Robinson, and the duty owed by Robinson to plaintiff, comprehended only conservation and not destruction. 31 Cyc. p. 1388; Burks v. Stam, 65 Mo. App. 455. (6) The burden was on the defendants to show that Robinson did have authority to make the reduction, and this they failed to do. Knoche v. Whiteman, 86 Mo. App. 573.

FARRINGTON, J.—The defendant in error, Ellwood V. Matlack, was plaintiff in the trial court, and the plaintiffs in error were the defendants. In this opinion we will refer to Matlack as the plaintiff and Paregoy and others as the defendants.

A petition was filed by the plaintiff against Elizabeth F. Anderson, adminstratrix of the estate of E. L. Anderson, deceased, Elizabeth F. Anderson individually, Corrie Cole, Homer Seals, H. P. Sewell, E. C. Paregoy, J. B. McCullough and Charles W. Edwards as defendants, seeking to establish plaintiff's title to a mining lease and effect the collection of certain royalties accruing from the mining of said land. The petition alleged and the evidence sustains the finding of the court that the Anderson Mining Company, composed of Elizabeth F. Anderson, administratrix of the estate of E. L. Anderson, Elizabeth F. Anderson and Corrie Cole, had a first lease on the lands mentioned in the evidence, a lease having been made to the Anderson Mining Company on a tract known as the Northern land. The Anderson Mining Company on June 4, 1909,

executed and delivered to plaintiff a mining lease on said land for a term ending January 14, 1918, at fifteen per cent royalty, under which the plaintiff was let into possession. On May 11, 1911, plaintiff executed and delivered to Paregoy and his associates a sublease on these lands for a term ending January 14, 1918, at twenty-five per cent royalty. The lease from plaintiff to Paregoy and associates required continuous mining, and contained a provision against assignment or subleasing without plaintiff's consent. In September, 1912, Paregoy and his associates assigned this sublease to Burke & Kerzey; the consent of plaintiff thereto, however, was not obtained until November 2, 1912, at which time plaintiff executed an instrument in writing consenting to the assignment to Burke & Kerzey and an assignment by them to Homer Seals, who associated with himself in the sublease H. P. Sewell. The condition of the consent and assignment to Seals and Sewell was that plaintiff be paid twenty-five per cent royalty and that all ore checks should be delivered to the Conqueror Trust Company or the Anderson Mining Company and the proceeds divided, twenty-five per cent to the plaintiff and seventy-five per cent to Seals and Sewell. Seals and Sewell mined the land and turned ore checks over to the Anderson Mining Company for a large quantity of ore, amounting in round numbers to about forty thousand dollars. The Anderson Mining Company appropriated fifteen per cent of the amount, which it had a right to as its royalty from the Matlack sublease, turned seventy-five per cent of the amount over to Seals and Sewell, and retained ten per cent which it refused to pay either Matlack or Paregoy and his associates, McCullough and Edwards. The petition of plaintiff sets up that he is entitled to all of this ten per cent and shows that defendants Paregoy, McCullough and Edwards are claiming five per cent of it.

Seals and Sewell filed an answer admitting the leases and assignments set forth in plaintiff's petition.

The Anderson Mining Company with defendants other than Seals and Sewell joined in an answer alleging that on September 24, 1912, the plaintiff by an instrument in writing reduced the royalty named in the lease (twenty-five per cent) to Paregoy and associates to twenty per cent. This answer also avers that relying on the reduction of royalty by W. J. Robinson, the agent of plaintiff, from twenty-five to twenty per cent, in their lease from plaintiff, they sub-leased the land to Burke & Kerzey, who afterward assigned their rights to the present operators, Seals and Sewell, and further pleaded a ratification by plaintiff of Robinson's act in reducing the royalty.

The plaintiff's reply consisted of a general denial of allegations of the several answers, and denied under oath the execution of the instrument purporting to reduce the royalty from twenty-five to twenty per cent.

During the hearing of the cause the Anderson Mining Company paid to the plaintiff one-half of the royalty collected up at that time. The decree established plaintiff's right to the other five per cent held by the Anderson Mining Company, and neither the Anderson Mining Company by the individuals composing it nor Seals and Sewell appeal from the judgment of the trial court. This narrows the question involved here to the right of plaintiff to claim the five per cent in the hands of the Anderson Mining Company as against Paregoy, McCullough and Edwards, and the issue presented here is whether or not a written instrument dated September 24, 1912, executed by W. J. Robinson as agent of the plaintiff, reducing the royalty in plaintiff's lease from twenty-five to twenty per cent, is binding on the plaintiff.

The only writing that Robinson had from the plaintiff vesting any authority whatever in him is contained in a letter dated February 16, 1910, written while plaintiff was en route from St. Louis to New York.

The letter is as follows (omitting the letterhead of the railroad company on whose stationery it was written):

"Feb. 16, 1910.

"Mr. W. J. Robinson,
    "Miners Bank Bldg.,
        "Joplin, Mo.

"Dear Mr. Robinson:—

"I was so short of time leaving St. Louis that I did not have the opportunity of sending you the letter I promised, but you may consider this your authority for looking after the Lee Hall mine in Joplin. I am anxious to know what was the result of the inquiry for leasing the property by the man we met on Fourth street on our return to the mine.

"I have received a bill from Clover, fire and tornado insurance, stating that the policies have been delivered to you. Will you please look over the policies and see what our rights are, in the event the mills not being in operation; that is, I want to find out whether we really are covered even though we do not pay the premium.

"I have arranged to take up the two notes for the balance due on the compresser from Kramer.

"Would like to know how you have arranged with Craig as to the payments on the gas engine and also the Dupont on the powder mill. If you will address me at Webster Groves the letter will be forwarded to me.

"Very truly yours,
    "E. V. MATLACK."

The plaintiff was undoubtedly having some trouble in keeping the land worked to the satisfaction of the Anderson Mining Company as it appears that several times notice of forfeiture had been posted or given and plaintiff and his agent Robinson had had several conversations from time to time with the owners of the Anderson Mining Company, in one or two of which

the plaintiff had referred to Robinson as his agent looking after his interests in regard to this property and on whom a notice of forfeiture had been served. It also developed in evidence offered by defendants that in conversations with Paregoy and his associates plaintiff had said to them that whatever Robinson did would be all right with him and that Robinson had authority to act for him. It was shown that at some time prior to September, 1912, there had been some talk between the parties of the plaitniff allowing some of his royalty to be used in the further development of certain shafts and drifts which would require an outlay of something like two thousand or three thousand dollars on the part of Paregoy and his associates, and that this suggestion had probably come from Robinson, and it was talked over with plaintiff. But nothing whatever came of this, and the plaintiff was afterward notified that the defendants, Paregoy, McCullough and Edwards, would not undertake this arrangement. It is shown that only a few days prior to the execution of the instrument reducing the royalty, which was made by Robinson, signed as agent of Matlack, there had been a large strike of mineral by an adjoining miner and that for a number of months prior to September 24, 1912, the date on which Robinson undertook to reduce the royalty, the defendants, Paregoy and associates, had done no work or made any outlay under their sublease.

It appears that Robinson had for years been looking after the properties of the plaintiff, and when he could interest miners who would look at the land he would report such fact to the plaintiff and the plaintiff would in each instance execute such sub-leases himself, and this too, during the time that Robinson had the letter of February 16, 1910, in his possession. Robinson also collected in such royalties as were due plaintiff, deposited them in the bank to a certain account, and used a part of the money for certain expenses

connected with the property. During all the time that
Robinson represented the plaintiff he at times would
interest parties in mining plaintiff's leasehold but
never undertook to make a lease or to change or modify
any lease, but would advise plaintiff of what he had
done and plaintiff would then execute any written
agreements with the lessees—with the one exception
of this reduction of September 24, 1912; and in this con-
nection it will be borne in mind that Paregoy, McCul-
lough and Edwards when they took their sublease from
plaintiff had it signed by the plaintiff and not by Rob-
inson who they now claim had authority to modify the
lease for the plaintiff.

Robinson was placed on the stand by the defend-
ants and he testified that at the time Paregoy asked
him to enter into the writing reducing the royalty he
told Paregoy he was afraid Matlack "wouldn't stand
for it," and that Paregoy said he would take chances on
Matlack standing for it; and that in that conversation
nothing whatever was said about any written authority.
Nor did Robinson inform Matlack, though he wrote
him at least one letter afterward, of the fact that he
had made a reduction in this sublease.

The evidence is convincing to our minds that the
first the plaintiff learned of any attempt to reduce this
royalty was on about November 1, 1912, something over
a month after Robinson had made the attempt, and that
plaintiff immediately went across the street to Paregoy
and McCullough's place of business and notified them
that he repudiated the instrument Robinson had signed
and that he would insist on the provision of the lease
requiring payment of a twenty-five per cent royalty to
him. Nothing whatever is shown to have been done by
Paregoy and his associates toward developing the land
or expending any money on the premises from Septem-
ber 24, 1912, until they were notified by plaintiff that
Robinson's act was unauthorized; and in fact no money

had been expended by them for a number of months prior to September 24, 1912.

The evidence fails to divulge any written authority in Robinson to make this modification in the lease, and the weight of the testimony is that the plaintiff had given no verbal authority to Robinson to perform any such act for him; and Robinson's course of dealing for several years prior thereto in handling plaintiff's property would not justify anyone in the belief that he had authority to make, change, modify or in any way affect plaintiff's leasehold or contract rights concerning the land on which he held a lease. Nor is there any evidence whatever that plaintiff did anything that would estop him from denying the authority of Robinson or that anyone was caused to change position to their detriment on account of any holding out of Robinson as having such authority or failure to repudiate Robinson's acts after they came to his notice.

The trial court on this question found that the reduction of royalty was made without Matlack's knowledge or consent by Robinson who had no written or verbal authority from Matlack authorizing such act; that Paregoy and his associates were not misled by Robinson's apparent authority; that Robinson withheld the information of his act from his principal, Matlack; that on November 1, 1912, as soon as plaintiff discovered from an independent source that Robinson had attempted to reduce the royalty he immediately repudiated such act and told Paregoy and his associates that he would insist on the royalty named in their sublease; and that Paregoy and his associates expended no money on the property on the faith of the reduction of royalty. This finding by the trial court is fully supported by the weight of the evidence and nothing in the record inclines us to a different view.

The rule with reference to implied agency is thus stated in 31 Cyc. 1218: "Finally, an implied agency must be based upon facts, and facts for which the

principal is responsible, and upon a natural and reasonable, and not a strained, construction of those facts.''

The burden of proving an agency is on the party claiming the benefit of a contract which was made by the one claimed to have been an agent, as well as the burden of showing by satisfactory evidence that the making of such contract was within the scope of the agent's authority. [Johnson v. Hurley, 115 Mo. 513, 22 S. W. 492; Knoche v. Whiteman, 86 Mo. App. l. c. 573.]

That rule whereby one party is held by reason of his conduct for the act of a third person, sometimes called ''agency by estoppel,'' can only be invoked by one who had relied and acted on the conduct of the alleged principal. [31 Cyc. 1219.] Robinson's acts and conduct with reference to what he did in caring for plaintiff's property were well known to the defendants, and no single act can be pointed to in this record showing that Robinson ever attempted to, or that plaintiff ever permitted Robinson to attempt to, make, change or modify any lease for him on this or any other land.

There being a finding that there was no authority, either written or verbal, for Robinson to make the reduction, it will not be necessary for us to go into the question—which has been ably briefed by counsel on both sides—of the power of an agent to reduce the royalty named in a lease upon verbal authority.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.